**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DAWN WILLIAMS O/B/O,
J.W.,

      Plaintiff,

vs.                                                    CASE NO. 3:11-cv-1134-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.[1]
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff Dawn Williams (hereinafter identified as Williams or Plaintiff) seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's application for supplemental security income (SSI) disability payments on behalf of her son, J.W., a minor child.  Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #19, Plaintiff's Brief).  Defendant filed her brief in support of the decision to deny disability benefits (Doc. #20, Defendant's Brief).  Both parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to the undersigned on February 10, 2012 (*see* Doc. #15, Reference Order).  The Commissioner filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  This Court has authority to conduct the requested review.  42

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

U.S.C. § 405(g).

Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court.  Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, the Commissioner's decision shall be **REVERSED and REMANDED** for additional proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On February 4, 2008, Dawn Williams filed an application for SSI disability on behalf of her son, J.W., a minor child (Tr. 93-103).  Williams claimed J.W. became disabled on October 6, 2007.  *Id.*  In the Disability Report - Child, Plaintiff alleged J.W.'s disabling condition was oppositional defiant disorder (ODD)  (Tr. 111).[2]

The application was denied initially and on reconsideration.  A hearing was held on November 29, 2010, before Administrative Law Judge (ALJ) John D. Thompson (Tr. 451-490).  Plaintiff and her son were represented at the administrative hearing by attorney Jessica Dumas.  Both Williams and J.W. appeared and testified at the hearing. Psychologist Dr. Carlos Kronberger, Ph.D., appeared by telephone and testified as a medical expert (ME) who had reviewed the submitted records.  On December 15, 2010, ALJ Thompson issued an unfavorable decision (Tr. 19-35).  Subsequently, the Appeals

---

[2]ODD is the acronym for Oppositional Defiant Disorder which is defined as, "a condition in which a child displays an ongoing pattern of uncooperative, defiant, hostile, and annoying behavior toward people in authority. The child's behavior often disrupts the child's normal daily activities, including activities within the family and at school." *See* http://www.webmd.com/mental-health/oppositional-defiant-disorder (last visited Mar. 25, 2013).

Council (AC) denied review of the ALJ's decision (Tr. 6-9), making  ALJ Thompson's decision the final decision of the Commissioner.  Thereafter, Plaintiff's counsel filed the instant complaint in federal court on November 16, 2011.  Additional legal counsel, Ms. Chantal Harrington, entered an appearance on behalf of Plaintiff and filed Plaintiff's Brief in support of Plaintiff's appeal of the Commissioner's decision to deny disability benefits.

## II. BACKGROUND FACTS AND THE ALJ'S FINDINGS

The child's history is set forth in detail in the Plaintiff's Brief, Defendant's Brief and the ALJ's Decision.  By way of summary, J.W. was born on June 17, 1998, and has been an adolescent at all times relevant to the SSI disability application (*see* Tr. 118).  J.W. was in the third grade at the time the disability application was filed and in sixth grade at the time of the hearing before the ALJ (Tr. 21, 471).[3]  J.W. has been diagnosed and treated for oppositional defiant disorder since at least October 2007 (*see* Tr. 292-325, 349-370).  J.W. was diagnosed with bi-polar disorder in July 2008 and thereafter treated for that condition as well (*see* Tr. 292-308, 349-370).  In addition the child's documented behavioral problems in the home, J.W. has an extensive history of behavior problems in school (*see* Tr. 180-289).  J.W.'s school system has assessed him with emotional/behavioral disabilities (EBD) (*see, e.g.*, Tr. 181), has placed him in Exceptional Student Education (ESE) (*see, e.g.*, Tr. 198), and has developed an Individual Educational Plan (IEP) with a Positive Behavior Intervention Plan to accommodate the J.W.'s EBD.

After the administrative hearing and having reviewed the record, the ALJ found that the child had not engaged in substantial gainful activity since the SSI disability application

---

[3]J.W. would be in seventh grade, however he repeated the third grade (Tr. 471).

date (Tr. 25).  The ALJ also found that J.W. had the severe impairments of "oppositional defiant disorder, ADHD and bipolar disorder," but J.W. did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P of the Regulations No. 4 (Tr. 25).[4]  ALJ Thompson further determined that the child had functional limitations resulting from his impairments and their symptoms, as follows: a less than marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; a less than marked limitation in the ability to care for himself; and, no limitation in heath and physical well-being (Tr. 29-35).  Based on these limitations, the ALJ found that the child's impairments did not functionally equal the criteria of any listed impairment in Appendix 1, Subpart P of the Regulations No. 4 (Tr. 25).  For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).[5]  In accord

---

[4]ADHD is the acronym for attention deficit hyperactivity disorder.  ADHD is defined as: a behavioral disorder manifested by developmentally inappropriate degrees of inattentiveness (short attention span, distractability, inability to complete tasks, difficulty in following directions), impulsiveness (acting without due reflection), and hyperactivity (restlessness, fidgeting, squirming, excessive loquacity). To meet diagnostic criteria of ADHD as set forth in DSM-IV, the patient must display six or more specific symptoms of inattention, or six or more symptoms of hyperactivity and impulsivity, for at least 6 months to a degree that is maladaptive and inconsistent with developmental level. In addition, symptoms must have been present before age seven and there must be clear evidence of functional impairment in at least two settings (domestic, social, academic, occupational). *ADHD,* ONLINE MEDICAL DICTIONARY, http://www.medilexicon.com/medicaldictionary.php (last visited Mar. 28, 2013).

[5]All references to 20 C.F.R. shall be to the 2012 edition, unless otherwise noted.

4

with his findings in each of the described domains, the ALJ determined that the child had not been under a disability at any time through the date of the decision (Tr. 35).

### III. SOCIAL SECURITY ACT ELIGIBILITY
### AND THE STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to SSI disability payments, the claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.

Under the applicable Regulations, the Commissioner employs a three-step evaluation process. First he determines whether the child claimant is engaged in substantial gainful activity.  If not, the next determination is whether the child claimant has a severe impairment or combination of impairments.  If so, the Commissioner must then determine whether the impairment or combination of impairments meet or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfy the duration requirement. Where the claimant fails to satisfy any of the criteria, he or she will be found not disabled. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924 -416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

The scope of the Court's review is limited to determining whether the correct legal standards were applied and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[6]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff, in this case the child claimant, is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

---

[6]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**IV. ISSUES AND ANALYSIS**

Plaintiff raises two issues on appeal.  First, Plaintiff argues the Commissioner erred in failing to discuss the opinions of multiple teachers and the school psychologist regarding the severity of J.W.'s limitations in the school setting.  Plaintiff's Brief at 1, 10-18.  Second, Plaintiff argues the ALJ erred in crediting the opinions of non-examining mental health consultants over the opinions of treating and examining mental health professionals.  *Id.* at 1, 18-23.

Defendant argues that contrary to Plaintiff's assertions, the ALJ thoroughly considered all the record evidence in evaluating the Plaintiff's claim to determine the child was not disabled.  *See generally*, Defendant's Brief.  More specifically, Defendant argues the medical records fail to show the child had greater limitations than what the ALJ assessed in finding less than marked limitations in four of the six functional domains and finding no limitations in the other domains.  Defendant's Brief at 6.  Defendant also asserts the ALJ "particularly discussed [J.W.'s] school records and teachers' assessments in evaluating his functioning in the domains of acquiring and using information and attending and completing tasks."  *Id.* at 7-9 (internal citations omitted).

Upon its independent review of the ALJ's decision and the record evidence, the Court finds merit in some of Plaintiff's arguments and finds Defendant's arguments overlook flaws in the ALJ's decision that require the case be remanded for reconsideration.  In particular, the Court's review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d at 1239, reveals the ALJ either failed to consider, or did not properly consider, a substantial portion of the record evidence.  Thus, it is not clear to this Court

whether substantial evidence supports the ALJ's factual findings and if those findings were made in accordance with the prevailing case law and applicable Regulations.

For the reasons stated herein, the undersigned agrees that the ALJ erred in failing to discuss the opinion evidence of multiple teachers and the school psychologist, all of whom had significant interactions and long-term relationships with the child claimant. Moreover, the ALJ's weighing of the medical expert's testimony juxtaposed against the ALJ's weighing of the evidence from child's long-term treating psychiatrist is questionable, if not clearly erroneous.  As remand is required for these reasons, and on remand it will be necessary for the Commissioner to reconsider of all the evidence of record in accord with this opinion, the Court's declines to fully analyze and discuss the merits Plaintiff's second issue.

### *Overall Evaluation of the Evidence*

The plaintiff has the burden of providing the medical and other evidence about his or her impairments for the ALJ to use in reaching his conclusions.  20 C.F.R. § 416.912(a). The Regulations direct the administrative law judges to "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." 20 C.F.R. § 416.920(a)(3).  An ALJ may not pick and choose which evidence he considers in making the disability determination.  *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

In the instant action, Plaintiff has provided a plethora of record evidence, but the ALJ's decision is devoid of reference to the majority of the evidence of record.  Review of the decision reveals there is a single reference to the evidence obtained from the child's

third grade teacher (Tr. 29-30), a generic reference to "[o]bservations from school personnel" (Tr. 28), a generic finding that the child's "teachers note that he performs well when he actually attempts to attend and complete tasks at school" (Tr. 31), and a generic summary statement that the ALJ considered "all relevant evidence," which included "information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and other relevant evidence in the case record. . . " (Tr. 25).  While the lack of reference to specific record evidence may not warrant remand standing alone, as discussed *infra*, there are additional errors that when considered together require remand.

Here, the accuracy of the ALJ's findings of the child's limitations in the six functional domains is questionable in part because  the ALJ failed to demonstrate that he considered all the record evidence.  Review of the ALJ's decision leaves the Court unable to tell if a significant portion of the submitted evidence was considered.  For example, other than the mention of the third grade teacher and generic school personnel, there are no references in the ALJ's decision to: (1) Exhibit 3E— Putnam County School Board records concerning J.W.'s 2008 and 2009 consideration Section 504 accommodations under the Rehabilitation Act, and SSA Teacher Questionnaire forms completed by two of J.W.'s teachers evaluating the child in each of the six functional domains; (2) Exhibit 9E— SSA Teacher Questionnaire form completed by a third of J.W.'s teachers evaluating the child in each of the six functional domains; (3) Exhibit 10E— Individual Education Plan reports for 2009 and 2010, Emotional/Behavioral Disability Multi-disciplinary Evaluation Team Report dated September 22, 2009, Exceptional Student Education Social/Developmental History Interview reports

dated June 2, 2009 and November 30, 2005, and Classroom Observation report from 2005; (4) Exhibit 11E— Exceptional Student Education Functional Behavior Assessment reports from April 2008, August 2008 and March 2009 completed by the same Behavior Specialist; (5) Exhibit 12E— A narrative letter from J.W.'s third grade teacher describing the child's aberrant and anger behaviors in her classroom; (6) Exhibit 13E— Narrative teachers' notes of the child's behaviors August - October 2005; (7) Exhibit 14E— Narrative teacher's summary of the child's behaviors August - September of an unknown school year; (8) Exhibit 15E— Narrative letter dated September 29, 2006 from the Principal at Middleton-Burney Elementary School advising J.W. would not be permitted to return to that school due to unacceptable behavior (i.e., expulsion); (9) Exhibit 16E— Numerous student referrals and incident reports dating from 2006 through 2009 for unacceptable behaviors.

Under the Regulations, teachers, and other non-medical sources, may be treated as valuable resources when determining the severity of the child's impairment and how the child usually functions in comparison to other children of the same age.  20 C.F.R. § 416.913(d).  Moreover, school psychologists are acceptable medical sources for purposes of establishing, *inter alia*, learning disabilities.  20 C.F.R. § 416.913(a)(2).  The opinions of school teachers, "who have had extended contact with the claimant [child] in their professional capacity may outweigh the opinions of treating or examining sources, if their opinions are supported by other record evidence and if the source sufficiently explains the opinion."  *Cox ex rel. J.J.R. v. Astrue*, No. 10-00554-B, 2012 WL 1094443, at *8 (S.D. Ala. Mar. 30, 2012) (citations omitted).[7]  It is true, however, that the ALJ need not discuss each

---

[7]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

and every teacher evaluation in the record.  *See id.* (finding the ALJ's failure to discuss two narrative letters from two teachers, standing alone did not alone warrant remand); *Reed ex rel DMR v. Astrue*, No. 09-0149-KD-N, 2009 WL 3571699, at *3-4 (S.D. Ala. Oct. 26, 2009) (finding the ALJ's failure to expressly address the opinions of two teachers did not require remand because the decision as a whole reflected that the ALJ actually considered the teacher questionnaires in rendering his decision). On the facts of this case, however, ALJ Thompson's failure to discuss his review and consideration of the bulk of such evidence runs afoul of precedent within the Eleventh Circuit.  *See Shinn ex rel Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1283-87 (11th Cir. 2004) (finding it clear under the regulations that the ALJ is required to consider all available evidence and failure to consider the mother's testimony in this child disability case was error fatal to the ALJ's decision).

There is much evidence that conflicts with the ALJ's findings and those conflicts must be resolved by the Commissioner upon the remand of this case.  See *Wheeler*, 784 F.2d at 1075.  For example, the ALJ determined that J.W. was less than marked in the area of acquiring and using information, stating J.W.,'s behavioral problems only "occasionally interfere with his performance at school" (Tr. 30).  However, J.W.'s sixth grade teacher/counselor stated he will not work with other students and when "[s]tudents work in groups, he does not want to or does not participate" (Tr. 173).  Additionally, there are numerous referrals, reports of frequent absences and suspensions to contradict the ALJ's finding that J.W.'s problems only occasionally affect his ability to perform (Tr. 241-290). For the domain category of attending and completing tasks the ALJ found J.W. was less than marked and that although he "has some problems with attending to and completing

tasks, this appears to be related to his behavioral problems and not his inability to do these tasks" (Tr. 31).  However, one teacher noted J.W. had serious to very serious problems, occurring daily, in nine of thirteen categories in attending and completing tasks (Tr. 174) and another teacher marked J.W. had an obvious or a serious problem in seven of the thirteen categories that occur on a daily or weekly basis in this domain (Tr. 143).

Similarly, in the domain of interacting and relating with others the ALJ determined J.W. had a less than marked limitation, stating "[t]hough the claimant has experienced anger problems, it appears as though his medications have significantly improved his outbursts" (Tr. 32).  Contrary to this finding, record evidence demonstrates that J.W. received at least twenty-four referrals from 2007-2009 for stealing, yelling at the teacher, hurting students, and others (*see* Tr. 217).  All three teachers who completed the SSA Teacher Evaluations noted J.W. had serious to very serious problems in several categories under this domain category (Tr. 136, 144, 175). The ALJ references none of these reports and simply states J.W.'s medication has improved his outbursts, without any analysis of J.W.'s functioning around his peers and around adults (Tr. 32).

The ALJ's findings in the final two domains are similarly flawed.  For the domain category of moving about and manipulating objects the ALJ found no limitation because, "there is no objective evidence of any such tremors" (Tr. 33). This finding misstates the record as there are numerous accounts of J.W.'s hand tremors from Dr. Schneller, the school psychologist, from the teachers and from Dr. Haser (*see, e.g.*, Tr. 139, 145, 293, 375).  For the domain  of caring for yourself the ALJ stated J.W. had a less than marked limitation as he is able to dress and groom himself (Tr. 43).  This finding says nothing about

the numerous other categories within this domain, which include issues such as handling frustration appropriately, using good judgment regarding personal safety, identifying and appropriately asserting emotional needs and knowing when to ask for help.  20 C.F.R. § 416.926a(k).  One teacher  marked J.W. had a serious to very serious problem in three categories in this domain and stated J.W. will do fine for a long period of time and then will "snap" (Tr. 138), another teacher reported J.W. wants constant attention and acts out to get attention (Tr. 146), and the third teacher marked several serious to very serious problems and stated that J.W. had been sent out of class and refuses to work (Tr. 175).

After a careful consideration of the numerous teacher reports and school records the undersigned finds, the ALJ erred in failing to state any consideration of the opinions of J.W.'s teachers and other evidence.

### *Treating and Examining Medical Source Opinions*

Plaintiff's asserted issue of error here concerns whether the ALJ gave proper weight to: (1) the opinion of Dr. Michael Haser, M.D., one of the child's treating psychiatrists;[8] (2) the opinion of Dr. Sherry Risch, Ph.D., an examining psychologist; (3) the opinion of Dr. Jay Schneller, Ph.D., NCSP, the examining school psychologist; (4) Dr. Carlos Kronberger, Ph.D., the psychologist who testified as a medical expert after review of the record; and, (5) the state agency reviewers.  *See* Plaintiff's Brief at 18-23.  Regarding this issue, the

---

[8]Although the record is unclear regarding Dr. Haser's credentials as a psychiatrist, such information is readily available at the public website for the Florida Department of Health.  *See* http://ww2.doh.state.fl.us/IRM00PRAES/PRASLIST.ASP (type name, select Find Provider) (select Practitioner Profile) (select Education and Training) (last visited Mar. 28, 2013).

The Court refers to public websites throughout this Order and Opinion for informational purposes only.  The Court accepts no responsibility for and does not endorse any content found at such websites.

Court limits its analysis to the argument the ALJ committed reversible error by failing to give weight to the opinion of the school psychologist, which the ALJ actually did not mention at all, and by crediting the testimony of the medical expert over the opinion of the treating psychiatrist without adequate reasoning stated in the decision.

The weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.   20 C.F.R. § 416.927.   The ALJ may consider a physician's medical specialty and decide to give more weight to the opinions of physicians in their areas of medical expertise and specialty. 20 C.F.R. § 416.927(d)(5).   The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 416.927(d).   If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.   20 C.F.R. § 416.927(d)(2).   A school psychologist is specifically acknowledged as an acceptable medical source for whose opinion may be entitled to deferential weight, dependent upon the nature of the relationship and the supporting evidence.   See 20 C.F.R. §§ 416.913(a)(2), 416.927.   Generally, more weight is given to the opinion of a source who

examined the claimant than a source who reviews the records to render an opinion.  20 C.F.R. § 416.927(c).

### Dr. Schneller

Dr. Schneller observed J.W. on July 30, 2009, August 27, 2009, and September, 1, 2009, to compile a Confidential Psychological Report for the Putnam County School District (Tr. 372-75).   The examination and report were conducted due to concerns regarding J.W.'s ongoing behavior difficulties (Tr. 372). At the time J.W. was in the fifth grade.  *Id.* Dr. Schneller administered four objective tests, which revealed J.W. functioning at grade level for math computation skills with deficiencies in "long division and overall fluency with poor attention to detail. [J.W.] presents with strong phonetic decoding skills but with weakness in vocabulary development and reading comprehension" (Tr. 373-74).   J.W. scored below grade level in all other categories (Tr. 374).   Dr. Schneller observed and recorded J.W.'s hand tremor and noted that due to his poor frustration tolerance, J.W., would continue to require accommodations in the classroom (Tr. 375).

As with all evidence presented by the Plaintiff, the ALJ had an obligation to consider this report.  While the failure to consider the report of an examining source may be found harmless, such is not the case in this instance.   *See Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (finding although the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible error, such failure was harmless error when correct application of the Regulations would not have contradicted the ALJ's ultimate findings).  Had the ALJ properly considered Dr. Schneller's report, his consideration may have altered his findings and

substantially changed the outcome of the decision.   While the ALJ may discredit the medical opinions of treating and examining physicians, he is required to state specific reasons for doing so.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).  With no mention of this opinion in the decision, the Court is at a loss to determine if it was adequately considered and properly weighed.

<u>Dr. Haser and Dr. Kronberger</u>

Dr. Michael Haser was J.W.'s treating psychiatrist from 2007 until at least 2010 (Tr. 299-362).  There are numerous evaluations contained in the record reflecting Dr. Haser's treatment relationship with J.W.  *Id.*  The records reveal J.W. would start to do better when placed on new medication, but after a few weeks would have side effects such as tremors, vomiting, weight gain, and fatigue (Tr. 300, 307, 313).  As one might expect with a growing child, waxing and waning symptoms were seen, medications and dosages were changed dependent upon the displayed behaviors and the child's physical growth.   Dr. Haser repeatedly diagnosed J.W. with ODD and bi-polar disorder (Tr. 292-328, 349-63, 406-10). Dr. Haser regularly assessed J.W. under the GAF system, finding his scores ranged from a low of 50 (on numerous occasions: *e.g.*, Tr. 300, 301, 303, 308, 317, 320) to a high of 70 (on two occasions: Tr. 306, September 26, 2008; Tr. 359, October 16, 2009).[9]

---

[9]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL

Interestingly, the assessed GAF scores did not always correspond with the severity of symptoms noted in the narrative portion of the treatment records.  This is yet another conflict in the evidence not yet resolved by the Commissioner because it was not addressed in the ALJ's decision. Dr. Haser completed a Childhood Disability Evaluation Form on November 13, 209 (Tr. 406-09).  The evaluation included no comments and Dr. Haser merely checked the boxes to indicate marked limitations in all of the functional domains except acquiring and using information. *Id.*  Without explanation or citation to the record, the ALJ gave Dr. Haser's opinion "no weight" because it was "not consistent with Dr. Ha[s]er's own treatment notes and contradictory to the claimant's and the claimant's mother's own testimony" (Tr. 28).[10]  The Court's independent review of the record, including the testimony at the administrative hearing, finds ALJ Thompson's reasoning is flawed.  Thus, the ALJ failed to state good cause to disregard the opinion of J.W.'s treating psychiatrist.  Whether proper consideration and weighing of the relevant evidence reveals the requisite good cause is a matter the Court leaves to the Commissioner on reconsideration of this case.

Dr. Carlos Kronberger, Ph.D., a licensed clinical psychologist, reviewed the record evidence and testified at the administrative hearing.  The decision reflects ALJ Thompson relied heavily on Dr. Kronberger's testimony (*see* Tr. 26-28).  While Dr. Kronberger is acknowledged as a medical expert, the Court finds it troubling that ALJ Thompson would accept the opinion of a reviewing medical expert over that of a treating psychiatrist without

---

DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

[10]Dr. Haser's name is incorrectly spelled in the ALJ's decision as "Hazer" (*see* Tr. 28).

stating his reasoning therefor.  Throughout the administrative hearing Dr. Kronberger and ALJ Thompson extensively discussed Dr. Kronberger's impression that the child claimant suffered from symptoms of ADHD, more so than his diagnosed conditions of ODD and bi-polar disorder (*see* Tr. 453-61, 481-82).  Curiously, the ALJ identified the condition of "ADHD" as a severe impairment for J.W., even though neither of the child's treating psychiatrists diagnosed him with that condition.[11]  In fact, it appears ALJ Thompson accepted "whole cloth" that J.W. must have ADHD based upon the testimony of Dr. Kronberger, who reviewed the record evidence, yet never examined the child.[12]  During the dialog interchange, ALJ Thompson commented that evidence shows J.W. "has problems sitting still at school . . . [b]ut, yet, with that [the psychiatrist] still doesn't offer a diagnosis of ADHD" (Tr. 461).  In response, Dr. Kronberger testified, "That's right, there's quite a bit of evidence throughout of ADHD, that he meets the criteria for ADHD as a diagnosis" (Tr. 461).  This whole cloth acceptance of Dr. Kronberger's opinions is also seen in the ALJ's findings of J.W.'s limitations within the six functional domains, as those findings mirror what Dr. Kronberger stated (*compare* Tr. 480-83 *with* Tr. 27, 28-34).

Whether J.W. is correctly diagnosed for his mental impairments is not a question for this Court, nor is it a question for the ALJ to determine.  The ALJ is tasked with accurate

---

[11]The record reflects treatment of J.W. by Drs. Michael Haser and Umesh Mhatre, both of whom are medical doctors with specialties in psychiatry.  *See* n. 8, *supra*.

[12]This case is not an instance in which the medical expert's testimony is based, in part, on his or her observations during the administrative hearing.  First, Dr. Kronberger was not physically present at the hearing, nor did he appear by video, so no observations were actually made.  Second, the questioning of Dr. Kronberger commenced at the initiation of the hearing (*see* Tr. 453-55).  Third, when the ALJ returned his questioning to Dr. Kronberger, the doctor was directed to respond based upon "sufficient documentation" of his review of the "evidence in its totality" (*see* Tr. 480).

18

review and proper consideration of the record evidence to ultimately determine if the claimant for disability benefits is entitled to them under the Social Security Act.  The Court's role is to accurately review the Commissioner's final decision for findings of fact supported by substantial evidence and for consideration of the record evidence in accord with the applicable Regulations and case law.  Here, the ALJ's decision fails to demonstrate the ALJ weighed the medical opinion evidence under the precedent in this circuit.  *See Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

As  it is impossible for the Court to tell if the ALJ applied the proper test in evaluating the treating physician's opinion, this case must be remanded.  *See generally, Owens v. Heckler*, 748 F.2d 1511, 1515-17 (11th Cir. 1984) (declining to affirm an ALJ's decision where it was unclear what test the ALJ used in reaching his conclusions and concluding it was not proper to affirm simply because some rationale might have supported the ALJ's conclusions).  On remand, the ALJ must consider the opinions of all of Plaintiff's examining and treating medical sources, as well as the opinions of non-examining medical sources, and give the proper weight to the testimony and statements of each as required by the law of this circuit.  *See Lewis,* 125 F.3d at 1440-41*; Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987).  If the ALJ finds reason to disregard the opinion of a treating or examining physician, psychiatrist or psychologist, he must provide specific reasons for doing so and these reasons must be supported by substantial evidence in the record.

As the Court has determined this case is due to be remanded for further proceedings, it is unnecessary to address this issue regarding other medical opinion

evidence further.  *See Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding it unnecessary to address certain issues because they were likely to be reconsidered on remand).   Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable Regulations and case law in all aspects.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).[13]   The case is remanded for additional proceedings consistent with this Order and Opinion.   The evidence must be correctly weighed in accordance with the Regulations and prevailing case law, and the child's functional capacity must be reassessed.   On remand, the ALJ may reopen the record and accept any additional evidence deemed appropriate.

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the

---

[13]Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Plaintiff/claimant to award disability benefits.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2013.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record

21